**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION**

DENNIS MOSS                                                                                          PLAINTIFF

V.                                                                           CIVIL ACTION NO. 1:13-CV-00167-SA-DAS

ALCORN COUNTY, MISSISSIPPI                                                              DEFENDANT

**MEMORANDUM OPINION**

Plaintiff brought this action alleging he was wrongfully terminated in retaliation for having exercised his right to free speech under the First Amendment and in violation of Mississippi public policy. Defendant has filed a Motion for Summary Judgment [51]. Upon due consideration of the motion, responses, rules, and authorities, the Court finds as follows:

*Factual and Procedural Background*

On December 13, 2012, Plaintiff Dennis Moss was employed as a jailer at the Alcorn County Regional Correctional Facility. In the early morning hours of that day, near the end of Moss' shift, a radio call went out that there was a fight occurring in the facility. Moss responded to the call and hurried to one of the jail's hallways where another jailer, Robert Pittman, and a state inmate, Christopher Gladney, were engaged in a physical struggle. Moss admits he did not attempt to intervene in the struggle.[1] A few seconds later, his superior, Lieutenant Levi Pendley, arrived and assisted Pittman in securing the inmate. Pittman and Pendley then escorted Gladney to a segregation cell with Moss following.

Moss alleges that once in the segregation cell, Pendley and Pittman beat the inmate but that he took no part. After the officers exited the cell, Moss claims Pendley told him in the presence of Pittman and another jailer, Jerry Stricklin, that he "should have got some of that."

---

[1] Another jailer, Keith Fugitt, was already on the scene when Moss arrived. Though Fugitt briefly placed his hands on Gladney's shoulders and/or back, it is undisputed that he also failed to render any substantial aid to Pittman.

Moss allegedly responded that he "didn't need to get involved in any of that." Moss did not report the alleged use of excessive force to anyone or discuss the incident with anyone beyond this exchange.

Four days later on December 17, 2012, following an investigation into the incident, Moss was notified by the facility's Chief of Security, Keith Latch, that Defendant was terminating his employment for "failure to engage."[2] Moss filed the instant action seeking damages from Defendant based on this termination decision.

*Summary Judgment Standard*

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when the evidence reveals no genuine dispute regarding any material fact and the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but

---

[2] Latch testified that, pursuant to standard protocol, he instigated an investigation by two officers who were outside the chain of command after being notified by Pendley that an officer and an inmate had been involved in a physical altercation.

only when . . . both parties have submitted evidence of contradictory facts." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir.1994) (en banc). However, conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002); SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1997); Little, 37 F.3d at 1075.

*Analysis and Discussion*

First Amendment Retaliation

Moss claims that he engaged in protected speech by refusing to beat Gladney and by stating that there was no reason to beat him. However, Defendant contends that Moss cannot establish that he engaged in protected speech or that his speech, even if protected, motivated its decision to terminate his employment.

"[T]he First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." Garcetti v. Ceballos, 547 U.S. 410, 417, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006) (citations omitted). "To establish a First–Amendment, free-speech retaliation claim under § 1983, a public employee must show that (1) [he] suffered an adverse employment action; (2) [his] speech involved a matter of public concern; (3) [his] interest in commenting on matters of public concern outweighed the defendant's interest in promoting workplace efficiency; and (4) [his] speech was a substantial or motivating factor in the defendant's adverse employment action." Burnside v. Kaelin, 773 F.3d 624, 626 (5th Cir. 2014) (citing DePree v. Saunders, 588 F.3d 282, 286–87 (5th Cir. 2009)). The last element is dispositive based on the record; therefore, the Court analyzes that issue first and need not determine whether Moss' alleged speech was in fact protected by the First Amendment.

It is undisputed that, other than Moss and the officer participants, no one witnessed the alleged beating of Gladney, and Moss testified that he did not report it to anyone before he was terminated.[3] Additionally, Moss testified that his only statement regarding the alleged beating – that he "didn't need to get involved in any of that" – was made in the presence of Pendley, Pittman, and Stricklin, none of whom were decisionmakers with regard to his termination. Indeed, the warden of the facility, Doug Mullins, was the only person with the authority to fire Moss,[4] and there is no evidence that he had any knowledge of Moss' alleged statement.[5]

In most instances, "only final decision-makers may be held liable for First Amendment retaliation employment discrimination under § 1983." Moore v. Huse, 578 F. App'x 334, 339-40 (5th Cir. 2014) (quoting DePree, 588 F.3d at 288 (internal quotation marks and citation omitted)). "Ordinarily, motivations of other supervisors and employees cannot be imputed to a final decisionmaker. Nevertheless, when the person conducting the final review serves as the 'cat's paw' of those who were acting from retaliatory motives, the causal link between the protected activity and adverse employment action remains intact." Id. (citing Gee v. Principi, 289 F.3d 342, 346 (5th Cir. 2002) (internal quotation marks omitted)). Though Moss does not

---

[3] Moss testified that he spoke with Pat Marlar, the jail administrator for the county jail, soon after being notified of his termination. However, Moss testified that he did not talk with her before he was terminated and that Marlar was no longer in his chain of command at the time.

[4] Defendant utilized a multi-tiered chain of command system. Sheriff Charles Rinehart testified that he delegated all hiring and firing decisions to Warden Mullins. Mullins testified that he reviewed and approved the recommendations of Chief Latch regarding the hiring and firing of employees. Lieutenant Pendley served as Moss' immediate supervisor, and he in turn reported to Latch. However, it is undisputed that Pendley had no authority to hire or fire employees, and Latch testified that he made his recommendation to terminate Moss based solely on his own review of video footage of the hallway incident and the investigating officers' report and that he did not discuss Moss with Pendley.

[5] Mullins testified that he did not know of Moss' alleged statement until the filing of this action and that he based his decision to approve Moss' termination on his own review of videotaped footage of the incident. Additionally, while Mullins would have been aware of allegations by Gladney that he had been struck by the officers in the segregation cell based upon the report of the investigating officers, there is no video footage showing what occurred in the segregation cell, and there is no evidence that Mullins had any knowledge with regard to Moss' purported role in the alleged beating.

specifically invoke the cat's paw theory, the Court finds it pertinent to address in these circumstances.[6]

"To invoke the cat's paw analysis, [the employee] must submit evidence sufficient to establish two conditions: (1) that a [supervisor or coworker] exhibited [retaliatory intent], and (2) that the same [supervisor or coworker] possessed leverage, or exerted influence, over the titular decisionmaker." Id. (citing Roberson v. Alltel Info. Servs., 373 F.3d 647, 653 (5th Cir. 2004) (internal citations and quotation marks omitted)). Though Mullins was the person with final authority to fire Moss, it is undisputed that Latch, the Chief of Security, recommended that Moss be terminated and that Mullins almost always followed Latch's recommendations. Moss argues that the jury may infer Latch had knowledge of his protected activity because Latch spoke with Pendley twice between the time of the incident and Moss' termination. However, Moss has submitted no evidence of the content of these conversations and Latch testified that he did not know about the alleged conversation between Moss and Pendley.[7] Further, Moss has presented no evidence that Mullins had any communications with or was influenced in any way by either Pendley or Pittman.

---

[6] The Court also notes that Moss brings his First Amendment claim against Alcorn County pursuant to 42 U.S.C. § 1983. While it is well settled law that municipal entities may be subject to liability under § 1983, Monell v. N.Y.C. Dep't of Social Svcs., 436 U.S. 658, 690, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), the doctrine of *respondeat superior* cannot serve as the basis for such liability. Id. at 691, 98 S. Ct. 2018 (". . . Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort. In particular, we conclude that a municipality cannot be held liable *solely* because it employs a tortfeasor . . . .") (emphasis in original). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick v. Thompson, --- U.S. ---, 131 S. Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011). In the case at bar, neither party has addressed Monell or the issue of whether Moss was terminated as a result of official policy, the act of a policymaking official, or a widespread custom or practice. Thus, for the purposes of the instant motion, the Court treats as uncontested the issue of whether Moss' termination was the result of official municipal policy.

[7] Latch testified that Pendley called him shortly after the incident and notified him that there had been a use of force with an inmate that required his review but that Pendley offered no details. Then, Latch testified that he spoke with Pendley again after the investigation was completed but that he spoke only about the need for the inmate to have been placed in hand restraints. Latch specifically testified that he never spoke with either Pendley or Pittman about Moss.

5

As the Fifth Circuit has explained with regard to the last element of a retaliation claim, "[i]t is axiomatic that a party cannot be 'substantially motivated' by a circumstance of which that party is unaware." Tharling v. City of Port Lavaca, 329 F.3d 422, 428 (5th Cir. 2003). Moss' attempts to establish an inference of causation are insufficient to meet his prima facie burden without some evidence of the decisionmaker's actual knowledge of his alleged protected activity.

First, Moss relies upon the close timing between Moss' alleged protected speech and his termination as evidence of causation. "However, even at the prima facie stage, temporal proximity can only establish a causal link when it is connected to the decision maker's knowledge of the protected activity." Thompson v. Somervell Cnty., Tex., 431 F. App'x 338, 342 (5th Cir. 2011) (citing Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001) (per curiam) ("The cases that accept mere temporal proximity between *an employer's knowledge of* protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close.") (emphasis added) (internal quotation marks and citation omitted); Cothran v. Potter, 398 F. App'x 71, 73–74 (5th Cir. 2010) ("The combination of temporal proximity and knowledge of a protected activity may be sufficient to satisfy a plaintiff's prima facie burden for a retaliation claim"); Ramirez v. Gonzales, 225 F. App'x 203, 210 (5th Cir. 2007) ("Fifth Circuit precedent requires evidence of knowledge of the protected activity on the part of the decision maker and temporal proximity between the protected activity and the adverse employment action."); Brungart v. BellSouth Telecomms., Inc., 231 F.3d 791, 799 (11th Cir. 2000) ("[T]emporal proximity alone is insufficient to create a genuine issue of fact as to causal connection where there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct.")). Here, Moss offers no evidence

establishing that Mullins, or even Latch, had knowledge of Moss' alleged statement or of his alleged refusal to participate in the beating of an inmate.

Moss also argues that causation may be satisfied by a chronology of events from which retaliation may be inferred. To that end, Moss contends that a jury might reasonably infer retaliation here because no other officer involved in the incident was disciplined in any way[8] and because his actions in the hallway did not rise to the level of a terminable offense. However, neither of the cases cited by Moss relieves him of his burden to show knowledge of protected activity by the decisionmaker. Though the Fifth Circuit recognized in both <u>Brady v. Houston Indep. Sch. Dist.</u>, 113 F.3d 1419, 1424 (5th Cir. 1997) and <u>Mooney v. Lafayette Cnty. Sch. Dist.</u>, 538 F. App'x 447, 454 (5th Cir. 2013) that a plaintiff may rely upon a chronology of events rather than direct evidence of a retaliatory motive to satisfy the causal connection requirement of a retaliation claim, neither case involved protected speech that was unknown to the decisionmakers.[9] As the Fifth Circuit has stated, "[m]erely pointing out inconsistencies in the [defendant's] stated justifications for [the adverse employment action] does not by the mere fact itself create the opposite inference that the [defendant] harbored retaliatory motivation." <u>Brady</u>, 113 F.3d at 1425.

---

[8] There is conflicting testimony as to whether any other officers were disciplined or retrained as a result of the incident at issue. However, viewing the facts in the light most favorable to the non-movant, the Court must resolve this conflict in favor of Moss. <u>Deville v. Marcantel</u>, 567 F.3d 156, 163-64 (5th Cir. 2009).

[9] In <u>Brady</u>, the plaintiff's protected speech resulted in the termination of other employees, and the Fifth Circuit focused on whether the plaintiff could prove the defendants acted with retaliatory intent without specifically addressing the issue of whether the defendants had knowledge of the plaintiff's protected speech. <u>Id.</u> at 1423-25. In <u>Mooney</u>, the plaintiff, a school administrator, alleged that her open support of a particular candidate for superintendent motivated her termination. 538 F. App'x at 450-52. There, the Fifth Circuit held that the plaintiff had presented a sufficient chronology of events from the time of her protected speech to the time of her termination to allow an inference of retaliation. <u>Id.</u> at 454-55. However, there was no question that the plaintiff's speech was known to the decisionmakers, and thus <u>Mooney</u> cannot stand for the proposition that a chronology of events alone is sufficient to establish causation where there is no evidence of knowledge of the protected activity by a decisionmaker.

Citing Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 146, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000), Moss argues that a jury may disbelieve Defendant's stated reason for terminating him and may infer discrimination from the falsity of Defendant's explanation. However, in Reeves the Supreme Court applied the familiar McDonnell Douglas burden-shifting framework to the plaintiff's claim of age discrimination under the Age Discrimination in Employment Act. 530 U.S. at 141-42, 120 S. Ct. 2097. That framework is not applicable to Moss' First Amendment retaliation claim. See Moore v. Huse, 578 F. App'x 334, 339 (5th Cir. 2014) ("We have previously made clear that the burden-shifting framework set out in Mt. Healthy for assessing causation for First Amendment retaliation claims is distinct from the McDonnell Douglas burden-shifting framework that applies to many other types of discrimination and retaliation claims.") (citation omitted); Mooney, 538 F. App'x at 453 ("The Fifth Circuit has made clear that, if the *prima facie* elements of a First Amendment retaliation claim are met, the claim is then evaluated under the 'mixed-motive' framework—not the McDonnell Douglas pretext analysis.") (citations omitted); Charles v. Grief, 522 F.3d 508, 516 n.28 (5th Cir. 2008) ( explaining that under the standard set forth in Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977), "once an employee has met his burden of showing that his protected conduct was a 'substantial factor' or 'motivating factor' in the employer's adverse employment action, the district court should determine whether [the employer] ha[s] shown by a preponderance of the evidence that it would have [taken the same adverse employment action] even in the absence of the protected conduct. If the employer is able to make such a showing, then the protected conduct in question does not amount to a constitutional violation justifying remedial action.") (quotation marks and citations omitted). Thus, Moss' reliance on Reeves is misplaced.

Further, even if appropriate in the case at bar, Moss would still be tasked with meeting his initial prima facie burden before preceeding to a pretext analysis. Reeves, 530 U.S. at 142-43, 120 S. Ct. 2097. Because Moss has failed to show that any decisionmaker had knowledge of his alleged protected activity and thus has not established that such activity motivated his termination, the Court finds that Moss has not met this initial burden and any argument relating to pretext is inapposite.

## Spoliation

Moss also argues that summary judgment should be denied because he is entitled to an adverse inference against Defendant based upon its spoliation of evidence. "Under the spoliation doctrine, a jury may draw an adverse inference that a party who intentionally destroys important evidence in bad faith did so because the contents of those documents were unfavorable to that party." Whitt v. Stephens Cnty., 529 F.3d 278, 284 (5th Cir. 2008) (quotation marks and citations omitted). The Fifth Circuit has recognized that "[a]n adverse inference of spoliation can be relevant on summary judgment." Schreane v. Beemon, 575 F. App'x 486, 490 (5th Cir.) cert. denied, 135 S. Ct. 762 (2014) (citing Byrnie v. Cromwell, Bd. of Educ., 243 F.3d 93, 107 (2d Cir. 2001) ("In borderline cases, an inference of spoliation, in combination with some (not insubstantial) evidence for the plaintiff's cause of action, can allow the plaintiff to survive summary judgment.") (internal quotation marks omitted)). However, such an inference is permitted "only upon a showing of 'bad faith' or 'bad conduct.'" Condrey v. SunTrust Bank of Georgia, 431 F.3d 191, 203 (5th Cir. 2005) (citing King v. Ill. Cent. R.R., 337 F.3d 550, 556 (5th Cir. 2003)). "Mere negligence is not enough, for it does not sustain an inference of consciousness of a weak case." Vick v. Texas Employment Comm'n, 514 F.2d 734, 737 (5th Cir. 1975) (citation omitted).

Here, Moss claims in response to Defendant's motion that "it is undisputed that Defendant destroyed the handwritten statements of the four (4) officers." The Court finds this statement to be without evidentiary support. While it is undisputed that Pendley, Pittman, Stricklin, and Moss each submitted handwritten statements about the incident at issue to the investigating officers and that those statements are now missing, Moss has presented no evidence that these statements were actually destroyed, much less who destroyed them and with what intent. In short, Moss has produced no evidence of bad faith or bad conduct on the part of Defendant. Instead, Moss relies upon evidence that the statements are missing and that, despite acknowledging their potential importance to the instant litigation, Defendant has no explanation for their whereabouts and possessed the means to destroy them. Such evidence is simply insufficient to evince bad faith on the part of Defendant. Vick, 514 F.2d at 737 (citation omitted). Therefore, the Court finds Moss is not entitled to an adverse inference.[10]

Further, this is not a "borderline" case as Moss has not presented any evidence that a decisionmaker had knowledge of his alleged protected speech. Whitt, 529 F.3d at 285 (spoliation inference not enough to prevent summary judgment where "[b]ut for the spoliation inference, there [wa]s little other substantial summary judgment evidence of liability against . . . defendants."). Even were the Court to find bad faith and apply an adverse inference, Moss has not submitted sufficient evidence to meet his prima facie burden and defeat Defendant's summary judgment motion.

---

[10] Additionally, Moss has not properly requested that the Court impose an adverse inference in this case. See L.U.CIV.R. 7(b) ("Any written communication with the court that is intended to be an application for relief or other action by the court must be presented by a motion in the form prescribed by this Rule."); L.U.CIV.R. 7(b)(3)(C) ("A response to a motion may not include a counter-motion in the same document. Any motion must be an item docketed separately from a response.").

Termination in Violation of Mississippi Public Policy

Moss also brings a state law claim for termination in violation of Mississippi public policy pursuant to the Mississippi Tort Claims Act. However, because the Court has found that Defendant is entitled to summary judgment with regard to Moss' federal law claim, it declines to exercise supplemental jurisdiction over his remaining state law claim. See 28 U.S.C. § 1367(3); Parker & Parsley Petro. Co. v. Dresser Indus., 972 F.2d 580, 585 (5th Cir. 1992) ("general rule is to dismiss state law claims when the federal claims to which they are pendent are dismissed"). Moss' state law claim is dismissed without prejudice.

*Conclusion*

For the foregoing reasons, the Court finds Defendant's Motion for Summary Judgment [51] is GRANTED. Moss has failed to meet his prima facie burden with regard to his claim for First Amendment retaliation and the same is dismissed with prejudice. Because no federal claims remain, the Court declines to exercise supplemental jurisdiction over Moss' remaining state law claim, which is dismissed without prejudice. A separate order to that effect shall issue this day.

SO ORDERED on this, the 2nd day of February, 2015.

      /s/ Sharion Aycock_____
      UNITED STATES DISTRICT JUDGE